**Nos. 25-3359 and 26-1064**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

SHANE EDWARD OTTE and MANDI OTTE, on behalf of Plaintiff and class
members,
Plaintiffs -Appellants,
v.
WICZER JACOBS, LLC, formerly known as WICZER SHELDON & JACOBS,
LLC, and PREMIER RESIDENTIAL MANAGEMENT COMPANY,
Defendants -Appellees.

---

TERRENCE MITCHELL, on behalf of Plaintiff and a class,
Plaintiff-Appellant,
v.
COSTELLO SURY & ROONEY, P.C., and MC PROPERTY MANAGEMENT
CORP.,
Defendants-Appellees.

---

Appeals from the United States District Court
for the Northern District of Illinois
Case Nos. 1:25-cv-02797 (Hon Sharon Johnson Coleman) and 1:25-cv-2801
(Hon. Manish S. Shah)

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS
SHANE EDWARD OTTE, MANDI OTTE AND TERRENCE MITCHELL**

---

Daniel A. Edelman
Dulijaza (Julie) Clark
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 S. Clark St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelman@edcombs.com
jclark@edcombs.com

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

                                                                                      Page

TABLE OF AUTHORITIES                                                                   iii

SUMMARY OF ARGUMENT                                                                    1

ARGUMENT                                                                               2

I.    THE TEXT AND PURPOSE OF THE STATUTES
      AT ISSUE PROHIBIT MANAGEMENT COMPANY
      COLLECTION FEES UNLESS THEY ARE SPECIFICALLY
      AUTHORIZED BY THE GOVERNING DOCUMENTS
      OF AN ASSOCIATION                                                                2

      A.    Under Illinois Law, Provisions For Shifting Fees
            and Costs of Litigation are Strictly Construed
            Against Their Allowance                                                    6

      B.    Defendants Fail to Reasonably Address the
            "Specifically Stated" Requirement                                          8

      C.    Specifically Stated" Requires An Express
            Authorization of Management Company
            Collection Fees                                                            12

II.   THE MANAGEMENT COMPANY COLLECTION FEE
      CANNOT BE JUSTIFIED AS A "FINE".                                                 14

III.  COLLECTING UNAUTHORIZED FEES VIOLATES
      THE FAIR DEBT COLLECTION PRACTICES ACT
      AND ILLINOIS CONSUMER FRAUD ACT                                                  14

IV.   PLAINTIFFS HAVE A VALID CLAIM FOR
      UNJUST ENRICHMENT                                                                18

V.    CONDOMINIUM PROPERTY ACT §18.7 DOES NOT
      IMMUNIZE MC PROPERTY FOR LIABILITY FOR
      COLLECTING AMOUNTS NOT OWED                                                      19

VI.   CONCLUSION                                                                       22

CERTIFICATE OF COMPLIANCE          23

CERTIFICATE OF SERVICE          24

**TABLE OF AUTHORITIES**

Page

**<u>Cases</u>**

*Advance Iron Works, Inc. v. Contegra Constr. Co.,*
    2025 IL App (1st) 191525-U 7

*Barger v. Indiana,*
    991 F.2d 394, 396 (7th Cir. 1993) 6

*Baruxen v. Hacker,*
    2025 IL App (5th) 240701, 263 N.E.3d 95 6

*BGX E-Health LLC v. Masters,*
    6:21cv1022, 2023 U.S. Dist. LEXIS 66713,
    2023 WL 3324803 (M.D.Fla. April 17, 2023)
    (Mag. Judge report) 18

*Boucher v. 111 E. Chestnut Condo. Ass'n,*
    2018 IL App (1st) 162233, 117 N.E.3d 1123 8

*Boyd v. U.S. Bank, N.A.,*
    787 F.Supp.2d 747 (N.D.Ill. 2011) 17

*Brundidge v. Glendale Fed. Bank,*
    168 Ill. 2d 235, 240, 659 N.E.2d 909, 912 (1995) 6

*Business Serv. Bureau v. Webster,*
    298 Ill.App.3d 257, 259,
    698 N.E.2d 702, 703-704 (4th  Dist. 1998) 10

*Cammacho v. City of Joliet,*
    2024 IL 129263, 240 N.E.3d 1137, 1146 (2024) 9

*Estate of Downs v. Webster,*
    307 Ill. App. 3d 65, 70,
    716 N.E.2d 1256, 1260 (3rd Dist. 1999) 10

*FTC v. Sperry & Hutchinson Co.,*
    405 U.S. 233, 244, n.5 (1972) 16

*Garcia v. Overland Bond & Inv. Co.,*
 282 Ill. App. 3d 486, 495-96,
 668 N.E.2d 199, 206-07 (1st Dist. 1996)    20

*Greenswag v. Lieberman Mgmt. Servs., Inc.,*
 2025 IL App (1st) 240289-U    15

*Hill v. PS Ill. Trust,*
 368 Ill.App.3d 310, 320,
 856 N.E.2d 560, 569 (1st Dist. 2006)    17

*Horist v. Sudler & Co.,*
 941 F.3d 274 (7th Cir. 2019)    19

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,*
 131 Ill. 2d 145, 545 N.E.2d 672 (1989)    17-18

*K's Merch. Mart, Inc. v. Northgate, L.P.,*
 359 Ill.App.3d 1137, 1143,
 835 N.E.2d 965, 971 (4th Dist. 2005)    7

*Knolls Condo. Ass'n v. Harms,*
 202 Ill. 2d 450, 459,
 781 N.E.2d 261, 267 (2002)    14

*Kujbida v. Horizon Ins. Agency,*
 260 Ill.App.3d 1001, 1006,
 632 N.E.2d 151, 155 (1st Dist. 1994)    11

*Linderman v. NewRez LLC,*
 25cv4271, 2026 U.S. Dist. LEXIS 102376,
 *32, 2026 WL 1266163 (N.D.Ill., May 8, 2026)    16

*Murphy-Hylton v. Lieberman Mgmt. Servs.,*
 2016 IL 120394,  72 N.E.3d 323    21

*Negro Nest, LLC v. Mid-Northern Management, Inc.,*
 362 Ill.App.3d 640, 642,
 839 N.E.2d 1083, 1085 (4th Dist. 2005)    6, 9

*People ex rel. Daley v. Datacom Sys. Corp.,*
146 Ill.2d 1, 13, 29-35,
585 N.E.2d 51, 56, 63-66 (1991)                    15

*People v. Smith,*
236 Ill.2d 162, 169, 923 N.E.2d 259, 263 (2010)    10

*Raintree Homes, Inc. v. Village of Long Grove,*
209 Ill. 2d 248, 258, 807 N.E.2d 439 (2004)        18

*Robinson v. Toyota Motor Credit Corp.,*
201 Ill.2d 403, 417-18,
775 N.E.2d 951-961 (2002)                          16

*Rothamel v. Fluvanna County,*
810 F. Supp. 2d 771, 782 (W.D.Va. 2011)            11

*Ryan v. City of Chicago,*
274 Ill. App. 3d 913, 921,
654 N.E.2d 483, 489 (1st Dist. 1995)               6

*Saika v. Ocwen Loan Servicing, LLC,*
357 F. Supp. 3d 704, 716 (N.D.Ill. 2018)           16

*Saltiel v. Olsen,*
85 Ill.2d 484, 488,
426 N.E.2d 1204, 1206 (1981)                       6

*Seeger v. AFNI, Inc.,*
548 F.3d 1107 (7th Cir. 2008)                      15

*Smith v. Short Term Loans, LLC,*
99cv1288, 2001 U.S. Dist. LEXIS 1554, *17,
2001 WL 127303 (N.D.Ill., Feb. 14, 2001)           20

*State Farm Mut. Auto. Ins. Co. v. Brown,*
16cv80793, 2017 U.S. Dist. LEXIS 57019, *20
(S.D.Fla. March 30, 2017)                          18

*Thornton v. Hamilton Sundstrand Corp.*,
07cv3122, 2007 U.S. Dist. LEXIS 103192, *11,
2007 WL 9817957 (N.D.Ill., Sept. 14, 2007)      20

*Unifund CCR Partners v. Shah*,
407 Ill.App.3d 737, 744,
946 N.E.2d 885, 892 (1st Dist. 2011)      10

*Uptown People's Law Center v. Department of Corrections*,
2014 IL App (1st) 130161,  7 N.E.3d 102      7

*Wells v. Colonial Heights Recreation Center, Inc.*,
2013 IL App (1st) 111850, 4 N.E.3d 110, 113-14      16

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547, 581-5 (7th Cir. 2012)      16

## **Statutes**

Fair Debt Collection Practices Act,
15 U.S.C. §1692 et seq.      1, 14

Fair Debt Collection Practices Act,
15 U.S.C. §1692e(2)      14

Fair Debt Collection Practices Act,
15 U.S.C. §1692f(1)      14

Federal Trade Commission Act, 15 U.S.C. §45(a)      17

735 ILCS 5/12-901      14

Illinois Common Interest Community Association Act,
§1-20, 765 ILCS 160/1-20      13

Illinois Common Interest Community Association Act,
§1-20(a), 765 ILCS 160/1-20(a)      13

Illinois Common Interest Community Association Act,
§1-30(g), 765 ILCS 160/1-30(g)      14

Illinois Common Interest Community Association Act,
§1-30(h), 765 ILCS 160/1-30(h) ............... Passim

Illinois Condominium Property Act, §9(g)(1),
765 ILCS 605/9(g)(1) ............... 13

Illinois Condominium Property Act, §9.2(a)-(b),
765 ILCS 605/9.2(a)(b) ............... 23

Illinois Condominium Property Act, §9.2(c),
765 ILCS 605/9.2(c) ............... Passim

Illinois Condominium Property Act, §18,
765 ILCS 605/18 ............... 13

Illinois Condominium Property Act, §18.7,
765 ILCS 605/18.7 ............... 19-20

Illinois Condominium Property Act, §27,
765 ILCS 605/27 ............... 12

Illinois Consumer Fraud Act, 815 ILCS 505/1(c) ............... 21

Illinois Consumer Fraud Act, 815 ILCS 505/2 ............... 1, 16

Illinois Consumer Fraud Act, 815 ILCS 505/10a(a) ............... 21

Illinois Public Act 94-384 ............... 3

Illinois Public Act 95-318 ............... 19

Illinois Public Act 96-1400 ............... 3

Illinois Public Act 97-1090 ............... 4

Illinois Public Act 99-41 ............... 4

## **Other Authorities**

Bailey and Pertschuk, *The Law of Deception:*
    *the Past as Prologue,*
        33 Am. U.L. Rev. 849, 861-63 (1984)                18

Black's Law Dictionary 1254 (5th Ed. 1979)                10-11

*Federal Trade Commission Staff Commentary*
*on the Fair Debt Collection Practices Act,*
53 Fed.Reg. 50,097, at 50,108 (Dec. 13, 1988)            15

Oxford English Dictionary (2d ed. 1989)                  11

Webster's Third New International Dictionary, 2187 (1964)  11

## SUMMARY OF ARGUMENT

In response to reports that condominium management companies were charging non-attorney, internally-generated collection fees, the Illinois General Assembly enacted statutes prohibiting management company collection fees unless "the authority to add the management fees to an owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the Association." 765 ILCS 605/9.2(c); 765 ILCS 160/1-30(h). Defendants argue that the statutory language is satisfied by provisions in declarations adopted many years prior to the enactments referring generally to "costs" and "expenses" of collection. It is not. Such provisions do not "specifically state" the "authority to add the management fees." Defendants' arguments are illogical and obfuscatory and ignore Illinois Supreme Court decisions.

The collection of fees prohibited by statute violates the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and constitutes unjust enrichment.

Accordingly, the judgments appealed from should be reversed.

**ARGUMENT**

**I.      THE TEXT AND PURPOSE OF THE STATUTES AT ISSUE PROHIBIT MANAGEMENT COMPANY COLLECTION FEES UNLESS THEY ARE SPECIFICALLY AUTHORIZED BY THE GOVERNING DOCUMENTS OF AN ASSOCIATION**

The Illinois Condominium Property Act was amended effective January 1, 2006, 765 ILCS 605/9.2(c), to prohibit management company collection fees from being charged to a unit owner unless "the authority to add the management fees to an owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the Association."  When the Illinois Common Interest Community Association Act was enacted in 2010, it similarly prohibited management company collection fees from being charged to a unit owner unless "the authority to add the management fees to a member's or unit owner's respective share of the common expenses is specifically stated in the declaration, bylaws, or operating agreement of the association."   765 ILCS 160/1-30(h).

Immediately prior to January 1, 2006, 765 ILCS 605/9.2(c) provided:

Sec. 9.2. Other remedies.

(a) In the event of any default by any unit owner, his tenant, invitee or guest in the performance of his obligations under this Act or under the declaration, bylaws, or the rules and regulations of the board of managers, the board of managers or its agents shall have such rights and remedies as provided in the Act or condominium instruments including the right to maintain an action for possession against such defaulting unit owner or his tenant for the benefit of all the other unit owners in the manner prescribed by Article IX of the Code of Civil Procedure.

-2-

(b) Any attorneys' fees incurred by the Association arising out of a default by any unit owner, his tenant, invitee or guest in the performance of any of the provisions of the condominium instruments, rules and regulations or any applicable statute or ordinance shall be added to, and deemed a part of, his respective share of the common expense.

The amendment, P.A. 94-384, effective January 1, 2006, added paragraph (c), providing:

(c) Other than attorney's fees, no fees pertaining to the collection of a unit owner's financial obligation to the association, including fees charged by a manager or managing agent, shall be added to and deemed a part of an owner's respective share of the common expenses unless: (i) the managing agent fees relate to the costs to collect common expenses for the association; (ii) the fees are set forth in a contract between the managing agent and the association; and (iii) the authority to add the management fees to an owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the association.

Four years later, in 2010, the language of 765 ILCS 605/9.2(c) was incorporated in the Illinois Common Interest Community Association Act, enacted by P.A. 96-1400, which applies to other types of homeowners' community associations. 765 ILCS 160/1-30(h) stated:

(h) Other than attorney's fees, no fees pertaining to the collection of a unit owner's financial obligation to the association, including fees charged by a manager or managing agent, shall be added to and deemed a part of a unit owner's respective share of the common expenses unless:

(i) the managing agent fees relate to the costs to collect common expenses for the association;

(ii) the fees are set forth in a contract between the managing agent and the association; and

(iii) the authority to add the management fees to a unit owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the association.

In 2011, this language was modified as follows:

> (h)  Other than attorney's fees and court or arbitration costs, no fees pertaining to the collection of a member's or unit owner's financial obligation to the association, including fees charged by a manager or managing agent, shall be added to and deemed a part of a member's or unit owner's respective share of the common expenses unless: (i) the managing agent fees relate to the costs to collect common expenses for the association; (ii) the fees are set forth in a contract between the managing agent and the association; and (iii) the authority to add the management fees to a member's or unit owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the association.  (Public Act 97-1090, enacted August 24, 2012)

In 2015, further modifications were made:

> (h) Other than attorney's fees and court or arbitration costs, no fees pertaining to the collection of a member's or unit owner's financial obligation to the association, including fees charged by a manager or managing agent, shall be added to and deemed a part of a member's or unit owner's respective share of the common expenses unless: (i) the managing agent fees relate to the costs to collect common expenses for the association; (ii) the fees are set forth in a contract between the managing agent and the association; and (iii) the authority to add the management fees to a member's or unit owner's respective share of the common expenses is specifically stated in the declaration, or bylaws, or operating agreement of the association.   (Public Act 99-41)

The structure of 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h) is straightforward.  The association is authorized to recover attorney's fees.  No other fees pertaining to the collection of a unit owner's financial obligation to the association – including fees charged by a management company – may be charged.  However, management company collection fees are permitted if, among other things, "the authority to add the management fees to an owner's respective share of the common expenses is specifically stated" in the governing

documents of the association.

Defendants argue that the following language in the *Mitchell* declaration,

recorded in 1980, should be construed as complying with the "specifically

stated" requirement in the 2006 statute:

> [T]here shall be added to the amounts due the cost of said suit, and other
> fees and expenses together with legal interest and reasonable attorneys'
> fees.  (Def.Br., p. 21)

Defendants also argue that the following provision in the 1998 Declaration of

the Valley Lakes Association involved in *Otte,* complies with the "specifically

stated" requirement of a 2010 statute:

> [T]here shall be added to the amount of such Assessment all the costs of
> collecting the Assessment and any other sum owing to the Community
> Association, including, but not limited to, attorneys' fees and title report
> costs and other costs associated with preparing and filing a complaint
> and maintaining and concluding such action.  (Otte Doc. 27-1, p. 28 of
> 52; Def.Br., p. 20)

Defendants are wrong.  Provisions for shifting litigation-related costs of

any sort are narrowly construed under Illinois law.  A statutory provision

authorizing management company collection fees if authorization for such fees

is "specifically stated" in specified types of documents requires an express

reference to management company collection fees in those documents.  General

references to "costs" or "expenses" are not sufficient.  Neither are references in

documents other than those specified, particularly when the specified

documents must be adopted by the unit owners and the references are in

documents adopted by the association board without a vote of unit owners.

**A.** **Under Illinois Law, Provisions for Shifting Fees and Costs of Litigation Are Strictly Construed Against Their Allowance**

765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h) build upon Illinois law that narrowly limits the right to recover attorney's fees and any other costs and fees associated with litigation. Contrary to the statement at Def.Br., p. 23, that rule is ***not*** limited to attorney's fees.

The Illinois Supreme Court has held that the rule applies to all "ordinary expenses of litigation," *Saltiel v. Olsen,* 85 Ill.2d 484, 488, 426 N.E.2d 1204, 1206 (1981). *Accord, Brundidge v. Glendale Fed. Bank,* 168 Ill. 2d 235, 240, 659 N.E.2d 909, 912 (1995) ("attorney fees and the expenses of suit"); *Negro Nest, LLC. v. Mid-Northern Mgmt.,* 362 Ill.App.3d 640, 649, 839 N.E.2d 1083, 1091 (4th Dist. 2005) ("cost or expense-shifting provisions in contracts" are narrowly construed); *Baruxen v. Hacker,* 2025 IL App (5th) 240701, ¶13, 263 N.E.3d 95, 100 ("Attorney fees and costs"); *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 921, 654 N.E.2d 483, 489 (1st Dist. 1995) ("attorneys' fees or costs of the litigation"). The matter is one of Illinois law, and "State courts are the final arbiters of state law." *Barger v. Indiana,* 991 F.2d 394, 396 (7th Cir. 1993).

Defendants' statement (Def.Br., p. 28) that "Appellants provide no authority or explanation as to why" such decisions "should apply here for collection of costs that are not attorney fees" thus disregards controlling Illinois law. Furthermore, if Illinois narrowly limits recovery of attorney fees and other amounts which are ***actually disbursed to third parties*** such as lawyers and

-6-

court clerks, it follows ***a fortiori*** that the same rule of stringency applies to management company collection fees – which are created by a non-arms-length agreement between the association board and the management company with the expectation that the unit owner will be forced to pay them. Statutory and contractual authorizations for "attorneys fees" have been construed to mean fees of an attorney who is not a salaried employee of the party, *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, ¶25, 7 N.E.3d 102, authorizations for "costs" do not include the value of the time spent by a party's employee, *Advance Iron Works, Inc. v. Contegra Constr. Co.*, 2025 IL App (1st) 191525-U, ¶193, and contractual authorization for "all expenses" has been limited to "direct out-of-pocket expenses," not "management fees" which "can be set in any amount," *K's Merch. Mart, Inc. v. Northgate, L.P.*, 359 Ill.App.3d 1137, 1143, 835 N.E.2d 965, 971 (4th Dist. 2005).

765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h) authorize attorney's fees and flatly prohibit other fees pertaining to collection, including management company collection fees. Under an exception in each statute, management company collection fees may be charged if, among other things, "the authority to add the management fees to an owner's respective share of the common expenses is specifically stated" in the governing documents of the association.

Defendants attempt to distinguish Illinois cases such as *Negro Nest* by

suggesting that whether management company collection fees are permitted is a mere matter of contractual intent. (Def.Br., p. 23) Under 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h), it is not. The statutes must be complied with. Management company collection fees are forbidden unless "the authority to add the management fees . . . is specifically stated. . . ." Furthermore, they must be specifically stated in the governing documents – declaration or bylaws in the case of a condominium association; declaration, bylaws or operating agreement in the case of a common interest association. Providing for them in contracts, rules and regulations is not sufficient.

Under Illinois law, "[w]e must not interpret statutes in a manner that makes them meaningless. . . . We must interpret statutes in light of the problems the legislature intended to address." *Boucher v. 111 E. Chestnut Condo. Ass'n*, 2018 IL App (1st) 162233, ¶18, 117 N.E.3d 1123, 1130. Defendants' arguments are inconsistent with these rules.

> **B.      Defendants Fail to Reasonably Address the "Specifically Stated" Requirement**

Defendants fail to reasonably address the "specifically stated" requirement in 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h). References to "costs" or "other fees and expense" in documents adopted long before the enactment of the statutes are general, could not have contemplated internally-generated management company collection fees, and do not satisfy a requirement that "the authority to add the management fees . . . is specifically

stated. . . ." The plain meaning of the statutes is that there must be an express reference to management company collection fees.

Consideration of the evident purpose of 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h) leads to the same conclusion. Since the "specifically stated" requirement is new, it was not likely that existing governing documents would refer to management company collection fees. The governing documents would have to be amended to include such language. That would require action by the property owners, as opposed to the board of directors. In most cases, it would require a supermajority of the property owners. In short, management company collection fees are forbidden unless and until the requisite majority of the property owners choose to allow them, notwithstanding their non-arms-length nature. Furthermore, the authority for management company collection fees has to be in a document that is recorded in the real estate records.

Defendants' construction totally defeats that purpose. If general references to "costs" and "expenses" were sufficient, the General Assembly would not have required that "the authority to add the management fees . . . is specifically stated. . . ." The plain language of 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h) requires a specific reference to management company collection fees.

Plaintiffs' opening brief cited a number of Illinois Supreme and Appellate Court decisions which interpret "specifically stated" in various statutes. In all

cases, the courts required an express reference to the fee, charge or item of information. *Cammacho v. City of Joliet*, 2024 IL 129263, ¶¶22-29, 240 N.E.3d 1137, 1146 (2024); *Negro Nest, LLC v. Mid-Northern Management, Inc.*, *supra*, 362 Ill.App.3d 640, 642, 839 N.E.2d 1083, 1085 (4th Dist. 2005); *Business Serv. Bureau v. Webster*, 298 Ill.App.3d 257, 259, 698 N.E.2d 702, 703-704 (4th Dist. 1998); *Unifund CCR Partners v. Shah*, 407 Ill.App.3d 737, 744, 946 N.E.2d 885, 892 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518. *See also, Estate of Downs v. Webster,* 307 Ill. App. 3d 65, 70, 716 N.E.2d 1256, 1260 (3[d] Dist. 1999) ("Statutes which allow for recovery of attorney fees must do so by specific language. . . . When the language does not specifically state that 'attorney fees' are recoverable, courts will not give the language an expanded meaning.").

Defendants argue that these decisions did not construe 765 ILCS 605/9.2(c) and 765 ILCS 160/1-30(h). This is true. However, where the Legislature uses a term that has been repeatedly given judicial construction, it is presumed to adopt that construction. *People v. Smith*, 236 Ill.2d 162, 169, 923 N.E.2d 259, 263 (2010).

The accepted construction of "specifically" requires an express and precise reference: "Black's Law Dictionary defines 'specific' as 'precisely formulated or restricted; definite; explicit; of an exact or particular nature * * * tending to specify or to make particular, definite, limited or precise.' (Black's

Law Dictionary 1254 (5th Ed. 1979).) 'Specific' has also been defined as 'characterized by precise formulation or accurate restriction * * * free from such ambiguity as results from careless lack of precision or from omission of pertinent matter.' (Webster's Third New International Dictionary, 2187 (1964).)" *Kujbida v. Horizon Ins. Agency,* 260 Ill.App.3d 1001, 1006, 632 N.E.2d 151, 155 (1st Dist. 1994).

Another court construing a statutory exception using "specifically" concluded:

> . . . "Specifically" is defined as "[i]n a specific or definite form or manner." Oxford English Dictionary (def. 2) (2d ed. 1989). "Specific," in turn, is defined as "[p]recise or exact in respect of fulfilment, conditions, or terms; definite, explicit," id. (def. 4(a)), or "[e]xactly named or indicated, or capable of being so; precise, particular," id. (def. 4(b)). The use of the adverb "specifically" as a modifier of the type of legal authorization needed to exempt the use of the seal indicates that the legal authorization must be precise, definite, or explicit. The phrase "unless . . . authorized by law," on its own, is far-reaching. The addition of the term "specifically" by the drafter of the ordinance to the phrase "authorized by law" shows the drafter's intent to limit the reach of the exception, which otherwise might be construed expansively. It is most likely that the phrase "specifically authorized by law" is meant to allow uses of the seal that are explicitly permitted by a legislative enactment or a County governing body, though a binding case that is exactly on point would probably also suffice. Giving effect to the word "specifically" suggests a narrow interpretation of the exception that is contrary to the sweeping construction proposed by the County. The County's reading of the exception is only reasonable if the word "specifically" is struck altogether. Doing so would not be consistent with the general rules of statutory construction, which direct courts to presume that legislatures use each word for a reason and to attempt to construe laws to give effect to every word.

*Rothamel v. Fluvanna County,* 810 F. Supp. 2d 771, 782 (W.D.Va. 2011).

Governing documents which do not expressly refer to management company collection fees therefore do not "specifically state" that such fees are authorized.

**C.      Authorization in Rules and Regulations Not Adopted by the Unit Owners Is Insufficient**

Defendants further argue that authorization of management company collection fees in rules issued by an association board of directors is sufficient. It is not.

The significance of the distinction between declarations and bylaws (hereinafter "governing documents"), on the one hand, and rules and regulations, on the other, is that declarations and bylaws and amendments thereto must be adopted by the unit owners, whereas rules and regulations are adopted by the board of directors.

Substantive amendments to a condominium declaration must be approved by a 2/3 vote of all unit owners. 765 ILCS 605/27. In the case of a common interest association, a supermajority is not required by statute but is usually required for amendments by the declaration and bylaws. This was the case with the Valley Lakes Community Association declaration involved in *Otte.* (The declaration is found at 1:25-cv-02797, Doc. 27-1, filed 06/05/25, p. 47 of 52, PageID #:247, §11.2(b)).

In the case of both condominium associations and common interest associations, declarations and bylaws are recorded in the real estate records;

rules and regulations are not.

Defendants argue that 765 ILCS 160/1-30(h) does not require that the unit owners approve the fee provision. (Def.Br., p. 32) This argument is disingenuous. 765 ILCS 160/1-30(h) requires that the authority for management company collection fees be stated in the declaration, bylaws or operating agreement. 765 ILCS 160/1-20(a) provides that no modification or amendment of the declaration, bylaws, and or operating agreement "shall be valid unless the same is set forth in an amendment thereof and such amendment is duly recorded."

Given the different sources of authority – directors vs. the unit owners themselves – Defendants' equation of rules with declarations and bylaws is impermissible.

Defendants' argument is particularly inappropriate because both the Common Interest Community Association Act and Condominium Property Act specifically refer to rules and regulations. 765 ILCS 160/1-20; 765 ILCS 605/9(g)(1), 9.2(a)-(b), 18(a)(9)(A), (C), and (b)(6). If the General Assembly meant to allow management company collection fees to be imposed by rules and regulations, it would have said so. It didn't.

## II. THE MANAGEMENT COMPANY COLLECTION FEE CANNOT BE JUSTIFIED AS A "FINE."

In the case of Valley Lakes, Defendants assert that the $100 management company collection fee can be justified as a "fine" permitted by 765 ILCS 160/1-30(g). (Def.Br., p. 34) This amounts to an argument that a statutory provision specifically addressing management company collection fees can be evaded by calling the fee a "fine." The Legislature clearly intended to deal with management company collection fees in 765 ILCS 160/1-30(h), not 1-30(g). The provision specifically addressing the issue before the Court controls. *Knolls Condo. Ass'n v. Harms*, 202 Ill. 2d 450, 459, 781 N.E.2d 261, 267 (2002) (specific statutory provisions allowing a condominium association to obtain possession of a unit for failure to pay maintenance assessments, 765 ILCS 605/9.2, controlled over the general homestead exemption statute, 735 ILCS 5/12-901).

## III. COLLECTING UNAUTHORIZED FEES VIOLATES THE FAIR DEBT COLLECTION PRACTICES ACT AND ILLINOIS CONSUMER FRAUD ACT

The FDCPA expressly prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. §1692f(1), and "The false representation of— (A) the character, amount, or legal status of any debt," 15 U.S.C. §1692e(2). Under these provisions, "A debt collector may attempt to collect a fee or charge

-14-

in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (b) the contract is silent but the charge is otherwise expressly permitted by state law.  Conversely, a debt collector may not collect an additional amount if either (a) state law expressly prohibits collection of the amount, or (b) the contract does not provide for collection of the amount and state law is silent." *Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed.Reg. 50,097, at 50,108 (Dec. 13, 1988).  This is the rule followed by this Court.  *Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. 2008) (violation of FDCPA to demand collection fee when contract authorizes fee only if owner of debt places it for collection with a third party; debt buyer demanded fee even though it collected its own debts)

The Illinois Supreme Court has similarly construed the ICFA to prohibit the collection of unauthorized fees.  *People ex rel. Daley v. Datacom Sys. Corp.,* 146 Ill.2d 1, 13, 29-35, 585 N.E.2d 51, 56, 63-66 (1991) (adding amounts to debts for municipal fines violated ICFA).

Defendants rely on the unreported decision in *Greenswag v. Lieberman Mgmt. Servs., Inc.*, 2025 IL App (1st) 240289-U, for the proposition that a consumer fraud claim based on noncompliance with another statute is "viable only if she can demonstrate that [the other statute] contains an implied private right of action".  That proposition is contrary to reported Illinois Supreme Court

-15-

and Appellate Court decisions holding that the ICFA prohibits unfair practices as well as deceptive ones. 815 ILCS 505/2.  Under these decisions, conduct is "unfair" if  it (1) "offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or otherwise established concept of unfairness"; (2) "is immoral, unethical, oppressive, or unscrupulous," and/or  (3) "causes substantial injury to consumers." *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244, n.5 (1972), adopted in *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 417-18, 775 N.E.2d 951 (2002).  "'All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418, 775 N.E.2d at 961.

The "penumbra" language in the "unfairness" formulation adopted in *Robinson* makes clear that it is not necessary that there be a private right of action under the statutes or regulations containing a relevant concept of unfairness.  If a direct violation of a public policy statute or regulation is not even necessary, the existence of a private right of action under a statute or regulation cannot be required.  This Court has so held.  *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 581-5 (7th Cir. 2012) (rejecting argument that ICFA claim was "end run" around lack of private remedy in federal Home Affordable

-16-

Mortgage Program). *Accord, Linderman v. NewRez LLC,* 25cv4271, 2026 U.S. Dist. LEXIS 102376, *32, 2026 WL 1266163 (N.D.Ill., May 8, 2026); *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 716 (N.D.Ill. 2018) ("An unfairness claim may also rest on violations of administrative directives, like HAMP servicing guidelines, that themselves do not permit private enforcement"); *Boyd v. U.S. Bank, N.A.,* 787 F.Supp.2d 747, 752 (N.D.Ill. 2011). Unfairness claims have been sustained based on conduct which merely violated industry norms or ethical business practices. *Hill v. PS Ill. Trust,* 368 Ill.App.3d 310, 320, 856 N.E.2d 560, 569 (1st Dist. 2006). These obviously do not have private rights of action.

Defendants' assertion that a private right of action is necessary for an "unfairness" violation is particularly inappropriate because "Little FTC Acts" such as the ICFA were enacted for the very reason that the Federal Trade Commission Act, 15 U.S.C. §45(a), containing the "unfair" and "deceptive" standard, does not provide for a private right of action. The FTC encouraged states to enact parallel statutes prohibiting "unfair" and "deceptive" acts and practices and providing such rights. Bailey and Pertschuk, *The Law of Deception: the Past as Prologue,* 33 Am. U.L. Rev. 849, 861-63 (1984) (written by two FTC commissioners). If the purpose of the ICFA was to remedy the lack of a private right of action in the statute establishing the standard of conduct, construing it to require a private right of action in the statute establishing the

standard of conduct defeats that purpose.

## IV.   PLAINTIFFS HAVE A VALID CLAIM FOR UNJUST ENRICHMENT

The Illinois Supreme Court holds that there is a separate cause of action in Illinois for unjust enrichment.  *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672 (1989); *Raintree Homes, Inc. v. Village of Long Grove*,  209 Ill. 2d 248, 258, 807 N.E.2d 439 (2004).   To state a claim for unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment, and that the retention of the benefit violates fundamental principles of justice, equity, and good conscience.

Defendants dispute retention of the challenged fees. (Def.Br., p. 40) This is a factual contention not appropriately raised in the context of a Rule 12 motion –  or an appeal therefrom.  Moreover, where two parties act in concert to obtain unjust enrichment, they may be held jointly and severally liable. *State Farm Mut. Auto. Ins. Co. v. Brown*, 16cv80793, 2017 U.S. Dist. LEXIS 57019, *20 (S.D.Fla. March 30, 2017) ("When defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly."); *BGX E-Health LLC v. Masters*, 6:21cv1022, 2023 U.S. Dist. LEXIS 66713, *11, 2023 WL 3324803 (M.D.Fla. April 17, 2023) (Mag. Judge report).  It is not incumbent on the victim to figure out how the wrongdoers divided up the ill-gotten gains in order to survive a motion to dismiss.

## V. CONDOMINIUM PROPERTY ACT §18.7 DOES NOT IMMUNIZE MC PROPERTY FOR LIABILITY FOR COLLECTING AMOUNTS NOT OWED

Defendants contend that Mitchell is barred from suing MC Property because 765 ILCS 605/18.7(g)(1) states that "Nothing in this amendatory Act of the 95th General Assembly [P.A. 95-318] shall create a cause of action by a unit owner, shareholder, or community association member against a community association manager or the firm of a community association manager."

Public Act 95-318, enacted August 21, 2007, added §18.7 to the Condominium Property Act. Section 18.7 establishes a series of standards for association managers, relating to such matters as age, criminal record, and access to funds. It then states that nothing in Public Act 95-318 created a cause of action against a manager.

Defendants read §18.7(g) as if it provided that a manager who commits a recognized common-law or statutory tort is immunized from liability. That is *not* what it says.

Section 18.7(g) on its face does not immunize MC Property for liability for recognized, existing causes of action. Not creating a new cause of action against a manager or management company is not the same thing as negating an existing cause of action.

*Horist v. Sudler & Co.*, 941 F.3d 274 (7th Cir. 2019), cited by Defendants, does not support them. *Horist* held that the conduct complained of in that

-19-

case – charging too much for copies of documents required to be furnished by 765 ILCS 605/22.1 – was **not** a violation of the ICFA:

> [T]he Consumer Fraud Act claim rests on nothing more than a generic allegation that HomeWise charged too much for a PDF of the disclosure documents. But the Illinois courts have held that "charging an unconscionably high price generally is insufficient to establish a claim for unfairness." (941 F.3d at 281)

The Court concluded that the duties imposed by 765 ILCS 605/22.1 were imposed on the association, not the management company, and that the management company therefore had not breached any such duty. Only then did the Court conclude that §18.7 precluded the creation of a new cause of action against the management company.

In the present case, suing consumers for amounts they do not owe violates established standards of conduct under the ICFA. *Datacom, supra.* The creation of a new cause of action is not required to hold the management company liable for such conduct. Furthermore, MC Property is liable even if it was acting as an agent; agents who participate in conduct that violates the ICFA incur personal liability. *Garcia v. Overland Bond & Inv. Co.*, 282 Ill. App. 3d 486, 495-96, 668 N.E.2d 199, 206-07 (1st Dist. 1996); *Thornton v. Hamilton Sundstrand Corp.*, 07cv3122, 2007 U.S. Dist. LEXIS 103192, *11, 2007 WL 9817957 (N.D.Ill., Sept. 14, 2007); *Smith v. Short Term Loans, LLC*, 99cv1288, 2001 U.S. Dist. LEXIS 1554, *17, 2001 WL 127303 (N.D.Ill., Feb. 14, 2001). The ICFA itself applies to any "person," defined to include any "corporation

-20-

(domestic and foreign), company, . . . and any agent . . . thereof." 815 ILCS 505/1(c). An "agent" who engages or participates in deceptive or unfair conduct incurs liability. "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. . . . " 815 ILCS 505/10a(a).

Defendants' statement (Def.Br., p. 42) that "MC Property does not owe any independent duties to unit owners, including Mitchell," is patently incorrect. If MC Property allowed an unnatural accumulation of ice on the property it manages, injuring a unit owner, it would not be immunized from liability for negligence. *Murphy-Hylton v. Lieberman Mgmt. Servs.*, 2016 IL 120394, 72 N.E.3d 323. The same is true if MC Property permitted some other dangerous condition to exist on the managed property. *Wells v. Colonial Heights Recreation Center, Inc.*, 2013 IL App (1st) 111850, 4 N.E.3d 110, 113-14 (faulty pool ladder). If an agent of MC Property punched a unit owner in the course of performing MC Property's duty to collect money for the Mill Creek association, there is no question but that MC Property would be liable for the battery. The same applies to other improper collection activities, such as collecting money not owed.

The Court in *Murphy-Hylton* cautioned against creating immunity through expansive and unwarranted reading of statutes. 2016 IL 120394, ¶¶29-30. That is precisely what Defendants seek here. They have no basis for

doing so.

## VI.  CONCLUSION

The management company collection fees charged by Defendants were not authorized in the manner required by Illinois statutes.  Accordingly, the judgments appealed from should be reversed and the cases remanded for further proceedings.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
**EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC**
20 S. Clark St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelmajn@edcombs.com
jclark@edcombs.com

T:\41495\Appeal\Appellant's Reply Brief_Appeal.WPD

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitation of Fed.R.App.P. 32(a)(7)(B), as modified by Seventh Circuit Rule 32, in that it contains 5,634 words, according to the word counting feature of WordPerfect X6, used to prepare it.

2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(6), as modified by Seventh Circuit Rule 32(b), in that it was printed in Bookman Old Style 12 point type, a proportionally spaced typeface.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, certify that on June 24, 2026, this document was filed by ECF in both cases, causing a copy to be sent to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman